UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JUSTIN ADKINS,

                                Plaintiff,

            -against-

THE CITY OF NEW YORK, a municipal entity;
MICHAEL BLOOMBERG, former Mayor of the City of
New York; RAYMOND KELLY, former New York City
Police Commissioner; JOSEPH ESPOSITO, former New
York City Police Chief of Department; JAMES HALL,
Chief of Patrol, New York City Police Department;
PATRICK DEVLIN, Former Assistant Chief, Criminal
Justice Bureau, New York City Police Department; New
York City Police Department Captain Jack JASKARAN;
New York City Police Officer KENDAL CREER, Shield
No. 24657; New York City Police Officer VERGA; New
York City Police Officer John Doe 1, New York City
Police Officer JANE DOE 1; New York City Police
Supervisors and Commanders RICHARD and RACHEL
ROEs 1-50; New York City Police Officers JAMES and
JULIE DOES 1-50; individually and in their official
capacities, jointly and severally, (the names John and Jane
Doe, Richard and Rachel Roe and James and Julie Doe,
being fictitious, as the true names of these defendants are
presently unknown),

                              Defendants.

14 Civ. 07519

(JSR)(FM)

-------------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. 3

PRELIMINARY STATEMENT ........................................................................... 5

STANDARD OF REVIEW ................................................................................. 6

ARGUMENT ....................................................................................................... 7

   I.   Plaintiff Plausibly Alleges that He Was Falsely Arrested Where Defendants Failed to Provide "Fair Notice" and an Opportunity to Comply ................................................. 7

   II.   Defendants Are Not Entitled to Qualified Immunity on False Arrest Claims .................. 10

   III.   Plaintiff has Plausibly Alleged Violation of his First Amendment Rights, Malicious Prosecution, Abuse of Process and Failure to Intervene ........................................ 11

   IV.   Plaintiff has Plausibly Alleged Municipal Liability Based On Final Policy Maker Decisions, the Existence of a Widespread Custom and Practice of Arresting Protesters Without Fair Warning, and Failure to Train ..................................................... 13

   V.   Plaintiff Has Stated an Equal Protection Claim for Discrimination Based on Gender and Transgender Status ............................................................................... 17

   VI.   Plaintiff has Plausibly Alleged Use of Excessive Force and Unreasonable Conditions of Confinement. ........................................................................................ 21

   VII.   Plaintiff has Plausibly Alleged Municipal Liability for Failure to Train, Officers to Not Handcuff Transgender Prisoners to Rails for Extended Periods ........................... 27

CONCLUSION ................................................................................................ 29

# TABLE OF AUTHORITIES

## CASES

*Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004) ------ 7, 13, 14, 16

*Amusement Indus., Inc. v. Midland Ave. Associates, LLC*, 820 F. Supp. 2d 510, 518 (S.D.N.Y. 2011) -------------------------------------------------------------------------------------- 7

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ---------------------------------------------- 6, 7

*Barnes v. Pozzi*, No. 10 Civ. 2554(JGK), 2012 WL 3155073, at *9 (S.D.N.Y. Aug. 3, 2012) ---- 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) --------------------------------------- 7

*Buck v. City of Albuquerque*, 549 F.3d 1269 (10ᵗʰ Cir 2008) ------------------------------- 10

*Calamia v. New York*, 879 F.2d 1025, 1035 (2d Cir. 1989)---------------------------------- 24

*Cash v. County of Erie*, 654 F.3d 324, 335 (2d Cir. 2011), *cert. denied*, ⸺ U.S. ⸺, 132 S.Ct. 1741 (2012)------------------------------------------------------------------------------- 13

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153, (2d Cir. 2002)--------------------------- 15

*City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 446-47 (1985)---------------------- 17

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)---------------------------------------- 17

*Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011)---------------------------------- 13, 16

*Cox v. State of Louisiana*, 379 U.S. 559, 574 (1965) -------------------------------------- 10

*Cruz v. Reiner*, 11cv2131, 2011 U.S. Dist. LEXIS 142992 (S.D.N.Y. December 13, 2011) ---- 24

*D'Olimpio v. Crisafi*, 718 F.Supp.2d 340, 345–48, 346–47 (S.D.N.Y. 2010)(Rakoff, J.), *aff'd*, 462 F. App'x 79 (2d Cir. 2012) ----------------------------------------------------------- 16

*Davis v. City of New York*, 959 F.Supp.2d 324, 338 (S.D.N.Y. 2013) ------------------------- 13

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ------------------------------------------- 26

*Fontana v. Haskin*, 262 F.2d 871, 878 (9ᵗʰ Cir. 2001). ------------------------------------ 24

*Garcia v Does*, 764 F.3d 170, 177, 181-82 (2d Cir. 2014)-------------------------- 8,9,10,13

*Garcia v. Bloomberg*, 865 F. Supp. 2d 478, 485, 488-90 (S.D.N.Y. 2012)----6,8,9,11,13,15,16 23

*Glenn v. Brumby*, 663 F. 3d 1312, 1316, 1320 (11th Cir. 2011) ------------------------- 17,18

*Graham v. Connor*, 490 U.S. 386, 397 (1989)-------------------------------------------- 22

*Guerrero v. City of New York*, 2013 U.S. Dist. LEXIS 157783 (S.D.N.Y. Nov. 4, 2013) ------- 22

*Hansen v. Black*, 885 F. 2d 642, 645 (9ᵗʰ Cir. 1989)--------------------------------------- 24

*Hayden v. Paterson*, 594 F.3d 150, 160 (2d. Cir. 2010)------------------------------------- 6

*Hope v. Pelzer*, 536 U.S. 730, 741 (2002)----------------------------------------------- 21

*Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F.Supp.2d 408, 417 (S.D.N.Y. 2008) 6

*Lemmo v. McKoy*, 2011 U.S. Dist LEXIS 23075, 14-15 (E.D.N.Y. March 8, 2011)-------------- 25

*Matthews v. Lucas*, 427 U.S. 495, 510 (1976) ------------------------------------------- 20

*Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004)------------------------------ 22

*Monell v. New York Department of Social Services*, 436 U.S. 658, 693–701 (1978) ------------ 27

*Norsworthy v. Beard*, No. 14-cv-00695, ---F. Supp. 3d ---, 2014 WL 6842935, at *10 n.7 (N.D. Cal. Nov. 18, 2014)------------------------------------------------------------------- 18

*Papineau v. Parmley*, 465 F.3d 46 (2d Cir. 2006) ---------------------------------------- 10

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ----------------------------------- 16

*Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) -------------------------------------- 7

*Scott v. Fischer*, 616 F.3d 100 (2d Cir. 2010) -------------------------------------------- 11

*Shaw v. District of Columbia*, 944 F. Supp.2d 43, 54-55 (D.D.C. 2013) ----------------- 21, 26, 28

*Smith v. City of Salem*, 378 F.3d 566 (6ᵗʰ Cir. 2004)--------------------------------------- 17

*Sorlucco v. City of New York*, 971 F.2d 864, 871 (2d Cir. 1992) ------------------------------------ 13

*Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 317 n. 1 (2d Cir. 2010) --------------------------- 6

*Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir.1999) --------------------------------------------------- 22

*Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010)-------------------------------------------------- 22

*U.S. Dep't of Agriculture v. Moreno*, 413 U.S. 528, 535-38 (1973)--------------------------------- 20

*Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) --------------------------------- 13, 27

*Villante v. Dep't of Corrs. of City of New York*, 786 F.2d 516, 523 (2d Cir. 1986) ----------------- 7

*Vodak v. City of Chicago* 639 F. 3d 738 (7th Cir. 2011) ---------------------------------------------- 10

*Walker v. City of New York*, 974 F.2d 293, 297–98------------------------------------------------ 14, 16

*Wall v. County of Orange*, 364 F. 3d 1107, 1112 (9th Cir. 2004) ----------------------------------- 24

*Wilson v. Phoenix House* 42 Misc. 3d 677, 682, 683 (N.Y. Sup. 2013)---------------------------- 17

*Windsor v. United States*, 699 F.3d 169, 181-182 (2d Cir. N.Y. 2012) ----------------------------- 18

## <u>R</u>ULES

Fed. R. Civ. P. 12(b)(6) --------------------------------------------------------------------------------------- 4

## PRELIMINARY STATEMENT

Plaintiff Justin Adkins brings this action pursuant to 42 U.S.C. § 1983, on the grounds that his constitutional rights pursuant to the First and Fourth Amendments were violated when, on October 1, 2011, he was arrested by officers of the New York City Police Department (NYPD) without probable cause along with approximately 700 other people while participating in an Occupy Wall Street protest which culminated on the Brooklyn Bridge, and charged with disorderly conduct. Compl. ¶¶ 30-100, 119. Pursuant to the NYPD's policy, custom and practice, defendants effected plaintiff's arrest notwithstanding the fact that, under the circumstances, it was reasonable to believe that NYPD officers gave protesters implicit permission to be on the roadway of the Brooklyn Bridge, and they subsequently failed to provide protesters fair notice that their conduct would result in arrest and an opportunity to disperse. *Id.* ¶¶ 59-89.

While still on the bridge, upon disclosure that he is transgender, plaintiff was subjected to discriminatory, intrusive and inappropriate questioning regarding his anatomy and genitalia by defendant Creer, the arresting officer, and consistently referred to using inappropriate pronouns by NYPD Officer Verga, who conducted a field search of plaintiff. *Id.* ¶¶ 101,102. Plaintiff was subsequently brought to the NYPD's 90th precinct, where his rights were further violated when, pursuant to NYPD policy, custom and practice, he was singled out from a group of individuals arrested at the same protest, and charged with the same offenses, based solely on his status as a transgender man, removed from the cell where he was being safely held, and handcuffed in a painful and humiliating position to a railing immediately outside the only working bathroom in the precinct for a period in excess of 8 hours until he was released. *Id.* ¶¶ 108-111,137. During the hours he was handcuffed to the railing, plaintiff was forced to sit in close proximity to a steady stream of individuals using the bathroom, subjecting him to the stench of urine and the

humiliation of being present while fellow arrestees relieved themselves, forced to adopt painful positions, denied food provided to other arrestees, and subject to ridicule by officers assigned to the area. *Id*. ¶¶ 112-117. Following his eventual release from this torment, the City continued to prosecute plaintiff without a reasonable basis to do so until his case was dismissed almost a year after his arrest. *Id*. ¶¶ 119-121. Before the Court is the City's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## STANDARD OF REVIEW

On adjudication of a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d. Cir. 2010); Fed. R. Civ. P. 12(b)(6). "A motion to dismiss under Rule 12(b)(6) tests not the truth of a complaint's allegations, but only their legal sufficiency to state a claim." *Garcia v. Bloomberg*, 865 F. Supp. 2d 478, 485 (S.D.N.Y. 2012). A plaintiff need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 317 n. 1 (2d Cir. 2010)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Garcia*, 865 F. Supp. 2d at 485 (same).

The allegations in the initial complaint need not be asserted with a level of specificity only made possible through discovery. *Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F.Supp.2d 408, 417 (S.D.N.Y. 2008)(denying municipal defendant's motion to dismiss *Monell* claim where prisoner plaintiff sufficiently alleged municipal policy, explaining "[p]laintiff has

---

[1] On December 1, 2014, DOC Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Docket Entry No. 9.

[2] Plaintiff therefore hereby incorporates by reference arguments made by plaintiffs in Garcia in support of their false arrest claims in response to defendants' motion to dismiss in that case. *Garcia v. Bloomberg,* 11 cv 6957, Plaintiffs' Memorandum of Law in Support of Their Answer and Opposition to Defendants' Motion to Dismiss The Second

not yet had an opportunity to take the discovery that will be needed to flesh out any *Monell* claim."). *See also Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004); *Villante v. Dep't of Corrs. of City of New York*, 786 F.2d 516, 523 (2d Cir. 1986)("*Villante* should be afforded the opportunity to prove … that appellees were on notice that he was a continuous target of sexual harassment."); *Barnes v. Pozzi*, No. 10 Civ. 2554 (JGK), 2012 WL 3155073, at *9 (S.D.N.Y. Aug. 3, 2012)(denying municipal defendant's motion to dismiss *Monell* claim and finding that inmate plaintiff in Westchester County Jail sufficiently alleged municipal policy by merely alleging that defendants "created a bias system" and that his placement on suicide watch and SHU confinement were retaliation for his earlier advocacy).

While a court is not "required to credit conclusory allegations or legal conclusions couched as factual allegations," *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013), "[c]haracterizing … factual allegations as 'conclusory' does not justify disregarding [the] basic principle" that a court must accept material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. *Amusement Indus., Inc. v. Midland Ave. Associates, LLC*, 820 F. Supp. 2d 510, 518 (S.D.N.Y. 2011). A court should therefore not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard simply "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

## ARGUMENT

### I. Plaintiff Plausibly Alleges that He Was Falsely Arrested Where Defendants Failed to Provide "Fair Notice" and an Opportunity to Comply

Plaintiff was among the over 700 individuals arrested on October 1, 2011 on the Brooklyn Bridge, under circumstances identical to those at issue in the related case of *Garcia v.*

*Bloomberg*, 11cv6957.[2] Compl. at ¶¶ 30-100. The facts of this case are indistinguishable from those of *Garcia* – plaintiff participated in a march which left Zucotti Park on October 1, 2011, proceeded in a peaceful manner, escorted by the NYPD, to the Brooklyn Bridge, entered the Brooklyn Bridge pedestrian walkway and, when NYPD officers allowed protesters onto the roadway and began walking in an easterly direction over the Bridge ahead of the protesters, joined his fellow protesters on the bridge's roadway. *Id*. at ¶¶ 33-73. At no time did plaintiff hear an order to disperse or a warning that his presence in the roadway of the Brooklyn Bridge would result in his arrest.[3] *Id*. at ¶¶ 74, 75, 92, 97. At no time did plaintiff fail to comply with any lawful order from a police officer. *Id*. at ¶¶ 92-94. Plaintiff was nevertheless arrested without probable cause along with over 700 other individuals led onto the Brooklyn Bridge by NYPD officers. *Id*. at ¶¶ 95-96, 98-99.

Accordingly, pursuant to this Court's prior rulings in *Garcia*, affirmed by the Second Circuit, plaintiff has plausibly alleged that defendants violated his First and Fourth Amendment rights when they arrested him after officers, by their actions, implicitly gave plaintiff, along with other protesters, permission to proceed onto the roadway of the Brooklyn Bridge, and then failed to provide them with fair notice that they would be subject to arrest if they remained on the roadway and an opportunity to disperse. *Id*. at ¶¶ 66-89; *see Garcia v. Bloomberg*, 764 F.3d 170, 181 (2d Cir. 2014); *Garcia*, 865 F. Supp. 2d at 488-89, 490. Indeed, defendants themselves concede in a footnote to the instant motion that this Court previously "found that police lacked

---

[2] Plaintiff therefore hereby incorporates by reference arguments made by plaintiffs in Garcia in support of their false arrest claims in response to defendants' motion to dismiss in that case. *Garcia v. Bloomberg,* 11 cv 6957, Plaintiffs' Memorandum of Law in Support of Their Answer and Opposition to Defendants' Motion to Dismiss The Second Amended Complaint, With Prejudice, Doc. No. 19 (Jan. 6, 2012).

[3] Defendants erroneously claim that "plaintiff fails to allege that he, personally, did not hear warnings…" Defs. Mem. at 6. In fact, plaintiff repeatedly so alleges. Compl. at ¶¶ 74, 75, 92, 97. The fact that plaintiff "fails to allege that…*no marchers* heard the warnings" (emphasis supplied) is of no moment - all that is required in order to state a claim is an allegation that *plaintiff* did not receive "fair warning" that his conduct would subject him to arrest. *See* Defs. Mem. in Supp. of Mot. to Dismiss (hereinafter "Defs. Mem.") at 6.

probable cause to arrest the group" because they did not give the group "fair warning," but nevertheless seek to relitigate here the issue of whether such a warning was required. Defs. Mem. in Supp. of Mot. to Dismiss (hereinafter "Defs. Mem.") at 5 n.3.[4] The Second Circuit affirmed the District Court's finding that it was, holding, that, "[t]aking plaintiffs' allegations as true, as we must, we believe that they have adequately alleged actionable conduct." *Garcia,* 764 F. 3d at 181. Defendants' insistence on citing the dissenting, rather than prevailing, Circuit Court opinion does not change the precedential value of the majority's holding that plaintiff, among with 700 other individuals, has plausibly alleged that he was arrested without probable cause. Defendants concede that the allegations as to the circumstances of plaintiff's arrest in this case are identical to those in *Garcia* in all relevant respects,[5] *see* Defs. Mem. at 1, thereby warranting the identical conclusion that plaintiff has adequately alleged a false arrest claim. [6]

_____

[4] Defendants also seek to relitigate the question of whether the City's parading without a permit statute, N.Y.C. Admin. Code § 10-110 is a strict liability statute, thus providing the requisite probable cause for the arrest of plaintiff and all others present on the Bridge. Defs. Mem. at 1, 3-5 ("the pleaded facts here establish that there was probable cause to plaintiff [sic] for parading without a permit, in violation of N.Y. City Administrative Code, §10-110."). This argument was summarily dismissed by the District Court in *Garcia* and abandoned on appeal. *Garcia*, 764 F. 3d at 176 n. 4; *Garcia*, 865 F. Supp. 2d at 488, 490. Plaintiff relies on this Court's prior finding that no probable cause existed to arrest plaintiff pursuant to N.Y.C. Amin. Code § 10-110. *Garcia*, 865 F. Supp. 2d at 488 ("the defendants cannot reasonably contend, given plaintiffs' allegations, that they did not knowingly allow the march to proceed even in the absence of a permit…marching without a permit, then, simply was not a problem, and no reasonable officer would have thought that the plaintiffs received a warning to the contrary.") Additionally, plaintiff incorporates by reference *Garcia* plaintiffs' arguments with respect to the constitutionality of the parading without a permit statute both on its face and as applied to the facts of this case. *Garcia v. Bloomberg,* 11 cv 6957, Plaintiffs' Memorandum of Law in Support of Their Answer and Opposition to Defendants' Motion to Dismiss The Second Amended Complaint, With Prejudice, No. 19 (Jan. 6, 2012).

[5] Defendants allege, without any basis in fact, that "videos…together with the pleaded facts, established plaintiff, with numerous others marched onto the roadway in the middle of the day without a permit and halted traffic for hours." Defs. Mem. at 1 n.1. In fact, the videos submitted by the parties in *Garcia* do not depict any images of plaintiff. Furthermore, there is also no allegation in the Complaint, which must be taken as true at this stage of the litigation, that plaintiff was among those protesters at the front of the march who could reasonably be believed to have heard any orders to disperse, was among those who locked arms and proceeded onto the Brooklyn Bridge roadway in purported defiance of such orders, or was the protester who inquired about the charge for remaining on the Bridge. *See* Defs. Mem. at 7, 8. Moreover, even if this were the case, plaintiff has alleged facts sufficient to allow the Court to conclude that protesters were not given a reasonable opportunity to disperse following any such orders. Compl. ¶¶ 74-85.

[6] Defendants argue in support of their effort to dismiss plaintiff's false arrest claim that plaintiff does not allege he was given express permission to be in the roadway. While this is true, neither did plaintiffs in *Garcia*. Both the District Court and Circuit Court decisions in *Garcia* turn on the question of whether or not NYPD officers gave

## II.  Defendants Are Not Entitled to Qualified Immunity on False Arrest Claims

Defendants are not entitled to qualified immunity unless "one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 764 F. 3d at 177 (citations omitted). This Court has held, and the Circuit affirmed, that under circumstances identical in all relevant respects to those alleged here, defendants failed to meet both prongs of this test, finding that the right to a constitutionally sufficient order to disperse and a reasonable opportunity to comply once law enforcement officers have ratified otherwise unlawful conduct was clearly established as of October 1, 2011, and that it was not objectively reasonable for defendants to believe that arrests were justified without "fair warning."[7] *Garcia,* 764 F.3d at 181-82 (*citing Cox v. State of Louisiana*, 379 U.S. 559, 574 (1965); *Papineau v. Parmley*, 465 F.3d 46 (2d Cir. 2006); *Vodak v. City of Chicago* 639 F. 3d 738 (7th Cir. 2011) and *Buck v. City of Albuquerque*, 549 F.3d 1269 (10th Cir 2008)); *Garcia*, 865 F. Supp. 2d at 487-91.[8] Contrary to defendants' contentions, the facts of the case

---

protesters *implicit* permission to be on the Brooklyn Bridge Roadway. *See Garcia*, 764 F.3d at 180. Contrary to defendants' assertions, this was also the case in *Vodak v. City of Chicago,* 639 F.3d 738, 743-44 (7th Cir. 2011), a case relied upon by the 2nd Circuit. *See Garcia* 764 F.3d at 179.

[7] Contrary to defendants' assertions, plaintiff's argument does not rest on his understanding of what police were doing, but on what an objectively reasonable officer would have understood based on what they observed: that, based on clearly established law, based on their actions, which gave rise to an objectively reasonable belief that marchers were permitted to advance onto the roadway of the Brooklyn Bridge, it was necessary to provide a warning to marchers that they were no longer permitted to be in the Brooklyn Bridge roadway, and an opportunity to comply. *See* Defs. Mem. at 11.

[8] Defendants efforts to distinguish this case from *Vodak* on the grounds that defendants in that case gave protesters explicit permission to march, thereby removing this case from its ambit are unavailing. This case falls squarely within the contours of the 7th Circuit's holding in *Vodak*, in which officers' permission to march on roadways without a permit was implied, not express as defendants contend. Defs. Mem. at 14; *see Garcia*, 764 F. 3d 179 (citing *Vodak v. City of Chicago*, 639 F.3d at 744)(noting that when officers "stood aside and permitted protesters to march westward, then moved in behind protesters and arrested them" the 7th Circuit in *Vodak* denied officers qualified immunity "finding that while officers *did not give explicit permission*," their conduct may have implied permission to proceed. [emphasis supplied]). Thus, the question under clearly established precedent, is not, a defendants would have it, *whether* permission to march on the roadway of the Brooklyn Bridge was implied, but, as it was in *Vodak*, whether defendants conformed their conduct to clearly established precedent when their actions

clearly establishing the right in question need not be identical to those now before the court. Defs. Mem. at 12; *see Garcia*, 764 F.3d 177.

Defendants now seek to relitigate what has already been decided by the Second Circuit. Both this Court and the Circuit have squarely rejected defendants' position that, at a minimum, defendants are entitled to qualified immunity on the basis of "arguable probable cause." *Garcia,* 764 F.3d at 181; *Garcia,* 865 F. Supp. 2d at 490-91. Defendants simply cannot avoid the Circuit's conclusion that, at this stage of the litigation, assuming all of the facts alleged in the complaint to be true, plaintiff has plausibly alleged facts under which no qualified immunity will lie. *Garcia* 764 F.3d at 181-82. Accordingly, plaintiff's false arrest claims should be permitted to proceed.

### III. Plaintiff has Plausibly Alleged Violation of his First Amendment Rights, Malicious Prosecution, Abuse of Process and Failure to Intervene

The vast majority of defendants' arguments in favor of dismissing plaintiff's First Amendment,[9] malicious prosecution, abuse of process and failure to intervene claims rest on a finding that probable cause or qualified immunity exist with respect to plaintiff's arrest on the facts alleged in the Complaint. Defs. Mem. at 15. Because this Court has already ruled, and the Second Circuit has already affirmed in *Garcia*, that neither probable cause nor qualified immunity is established on these facts, plaintiff has plausibly alleged a violation of his First

---

gave implicit permission to do so. *See* Defs. Mem. at 12. Defendants' efforts to avoid this inevitable conclusion by noting that *Vodak* was a 7th Circuit opinion are simply unavailing. *Id*.; *see Garcia*, 764 F.3d at 177 ("the unconstitutionality of that law or course of conduct will nonetheless be treated as clearly established if decisions by this or other courts clearly foreshadow a particular ruling on the issue, *even if those decisions come from courts in other circuits*" [emphasis supplied], *citing Scott v. Fischer*, 616 F.3d 100 (2d Cir. 2010)).

[9] Defendants speculate, without any basis whatsoever, that plaintiff's First Amendment claim may be based on a right to gender expression. Defs. Mem. at 15. Given that plaintiff's First Amendment claim is squarely based on the right to protest and has nothing to do with his transgender identity, plaintiff will not address defendants' arguments in this regard.

Amendment rights and of failure to intervene on the part of defendants. *See* Sections I & II *supra*.

Defendants further contend that plaintiff failed to allege which defendants engaged in malicious prosecution and what exculpatory evidence defendants withheld.[10] Defs. Mem. at 15. However, plaintiff clearly alleges that arresting officer, Kendal Creer, under the supervision of Richard and Rachel Roes, was responsible for initiating the prosecution against plaintiff by signing a criminal court complaint against him with knowledge that no probable cause existed for plaintiff's arrest under the circumstances. *See* Compl. ¶¶100, 119. It is reasonable to infer based on the allegations of the Complaint that defendants Creer and Roes were present at the scene of plaintiff's arrest, and thus aware that no constitutionally sufficient order to disperse and opportunity to comply therewith was given before plaintiff was arrested. Moreover, plaintiff clearly alleges throughout the Complaint the exculpatory evidence withheld, namely that defendant police officers led or implicitly ratified protesters' presence on the Brooklyn Bridge roadway, and subsequently failed to issue a constitutionally sufficient order to disperse or offer a reasonable opportunity to comply therewith. *See Id*. ¶¶ 45-98, 100, 119. Accordingly, plaintiff has plausibly alleged a claim of malicious prosecution.

With respect to plaintiff's claim of malicious abuse of process, plaintiff has also plausibly alleged facts necessary to survive a motion to dismiss this claim, including prosecution without probable cause to do so, and a collateral purpose of chilling plaintiff's First Amendment expression of his political views. *Id*. ¶¶172, 173.

---

[10] Presumably, defendants are alleging that plaintiff has failed to plausibly allege actual malice, one of the elements of a malicious abuse of process claim, which element can be established by pointing to exculpatory evidence withheld.

Accordingly, plaintiff's First Amendment, malicious prosecution, abuse of process and failure to intervene claims should be permitted to proceed.

**IV. Plaintiff has Plausibly Alleged Municipal Liability Based On Final Policy Maker Decisions, the Existence of a Widespread Custom and Practice of Arresting Protesters Without Fair Warning, and Failure to Train**

Municipalities are liable under 42 U.S.C. § 1983 where the violation of a constitutional right is attributable to a municipal policy or custom. Contrary to defendants' assertions, plaintiff need not "show that the municipality had an explicitly stated rule or regulation," *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)(internal citations omitted), and may instead rely on "decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011) (citations omitted).

A municipal policy "may be pronounced or tacit and reflected in either action or inaction." *Cash v. County of Erie*, 654 F.3d 324, 335 (2d Cir. 2011), *cert. denied*, —— U.S. ——, 132 S.Ct. 1741 (2012). A "city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *Connick*, 131 S.Ct. at 1360 (internal citations omitted); *see also Garcia*, 865 F. Supp. 2d at 492. The inaction of a high-level official constitutes a municipal policy or custom for purposes of *Monell* liability where it amounts to "deliberate indifference" to constitutional violations by his or her subordinates. *Davis v. City of New York*, 959 F.Supp.2d 324, 338 (S.D.N.Y. 2013); *see also Sorlucco v. City of New York*, 971 F.2d 864, 871 (2d Cir. 1992)(describing the standard as one of "constructive acquiescence" of senior policymakers to the actions of subordinate officers).

In order to establish deliberate indifference through inaction, a plaintiff need "only show a policymaking official had notice of a potentially serious problem of unconstitutional conduct,

13

such that the need for corrective action or supervision was 'obvious,' and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 130 n.10 (internal citations omitted) (2d Cir. 2004)(Sotomayor, J.).

In *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d. Cir. 1992), the Second Circuit set out a three-part test for establishing deliberate indifference to a duty to train or supervise: (i) a policymaker knows "to a moral certainty" his or her employees will confront a situation that (ii) either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation; and (iii) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. However, the Second Circuit has held that the "means of establishing deliberate indifference will vary given the facts of the case and need not rely on any particular factual showing." *Amnesty Am.*, 361 F.3d at 128.

As an initial matter, defendants' contention that plaintiff's claims against the City and defendants Bloomberg and Kelly should be dismissed on the grounds that there is no underlying constitutional violation should be summarily rejected for the reasons outlined in Sections I-III, *supra*. *See* Defs. Mem. at 16.

In response to defendants' remaining arguments with respect to his *Monell* claim, plaintiff hereby incorporates by reference arguments made by plaintiffs in *Garcia* with respect to the *Monell* claims asserted in that case. Additionally, plaintiff notes that the *Monell* claim asserted in the instant case is narrower than the one addressed by the Court in *Garcia*. Plaintiff here alleges a

> custom, pattern and practice of giving marchers the appearance of approving, condoning, directing or ratifying conduct which would otherwise be unlawful, such as marching in

the streets, and then arresting marchers without providing constitutionally sufficient notice that their conduct was no longer ratified and their continued presence at the location where NYPD offices had led them would subject them to arrest, without providing marchers with a reasonable opportunity to comply with lawful orders to disperse. Compl. at ¶ 124.

Plaintiff thus significantly narrows the breadth with which the alleged policy is defined, thus bridging the gap between the policy attributed to the City and the violations plausibly alleged in this case. *See Garcia*, 865 F. Supp. 2d at 492.

Finally, plaintiff asks this Court to take judicial notice of a publicly available letter dated May 9, 2006 from the Civilian Complaint Review Board to Police Commissioner Raymond Kelly[11] concerning complaints stemming from arrests during the Republican National Convention in 2004.[12] *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153, (2d Cir. 2002) (a court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."). The letter outlines at least two prior instances in which, after giving protesters express and implicit permission to proceed with a march in the absence of a permit, high ranking officials of the NYPD ordered arrests after providing constitutionally insufficient orders to disperse and failing to provide a reasonable opportunity to comply.

The existence of letter establishes that Commissioner Kelly, as a final policy maker,[13] was aware of prior instances of similar constitutional violations, and yet on October 1, 2011,

---

[11] Letter from Hector Rivera and Florence Finkle to Raymond Kelly of 05/09/06, available at http://www.nyclu.org/pdfs/rnc_fbi_ccrb_to_kelly_letter_051706.pdf (last visited December 15, 2014)

[12] In the event this Court finds judicial notice improper, plaintiff hereby seeks permission to amend his complaint to incorporate a specific reference to the letter.

[13] In the alternative, plaintiff has plausibly alleged that NYPD Chief of Department Joseph Esposito was on the scene and directed the arrests on October 1, 2011. Chief Esposito's actions may also be held to be those of a final policy maker, who made a choice among alternatives as to the course of action to follow with respect to protesters

made "a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy," to direct his subordinates to adopt the same practices, thereby establishing both an official policy by virtue of a final policy maker's decision and the individual involvement required to establish supervisory liability on Commissioner Kelly's part. *See Connick* at 1359 (citations omitted); *Garcia* 865 F. Supp. at 493 *(citing Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

Alternatively, the letter establishes that Commissioner Kelly was on notice of the pattern of unconstitutional conduct complained of here, namely a widespread custom, pattern and practice of failure to provide fair warnings under circumstances similar to those at issue here, and yet exhibited deliberate indifference to the resulting constitutional violations. *See Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 130 n.10 (internal citations omitted) (2d Cir. 2004)(Sotomayor, J.). Finally, the letter demonstrates that Commissioner Kelly made a deliberate choice which resulted in the failure to train, discipline and supervise officers to ensure that fair warning is provided to protesters under circumstances such as those in the case at bar, which was the moving force behind the violation of plaintiffs' constitutional rights in the instant case. *Walker*, 974 F.2d at 297–98.

Finally, defendants' contention that plaintiff's supervisory liability claims should be dismissed on the grounds that there is no such claim is available following *Iqbal* has been soundly rejected by this Court. Defs. Mem. at 18; *see D'Olimpio v. Crisafi*, 718 F.Supp.2d 340, 345–48, 346–47 (S.D.N.Y. 2010)(Rakoff, J.), *aff'd*, 462 F. App'x 79 (2d Cir. 2012)(citing *Colon*, 58 F.3d at 873) Under *Colon v. Coughlin*, the personal involvement of defendants which is a prerequisite to supervisory liability pursuant to 42 U.S.C. § 1983 may be shown by evidence

---

on the Brooklyn Bridge. *See Haus v. City of New York*, 2011 U.S. Dist. LEXIS 155735, 37 (S.D.N.Y. Aug. 31, 2011)

that: (i) the defendant directly participated in the constitutional violation; (ii) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (iii) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (iv) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (v) the defendant exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Plaintiff has plausibly alleged the direct involvement under all *Colon* theories but (iv) that defendants Bloomberg, Kelly, Esposito, Hall, and Jaskaran directly participated in the actions which resulted in the violation of his rights. Compl. at ¶ 14, 24, 31, 38, 86, 98. Accordingly, plaintiff's claims of supervisory liability against these defendants should be permitted to proceed.

## V. Plaintiff Has Stated an Equal Protection Claim for Discrimination Based on Gender and Transgender Status

The Equal Protection Clause requires that all similarly situated individuals be treated alike, and prohibits any classification which is "arbitrary or irrational." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 446-47 (1985). "A gender classification fails unless it is substantially related to a sufficiently important governmental interest." *Id.* at 441. Discrimination based on transgender status or gender non-conformity "constitutes sex-based discrimination under the Equal Protection Clause." *Glenn v. Brumby*, 663 F. 3d 1312, 1316, 1320 (11th Cir. 2011) (collecting cases); *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004) (finding transgender firefighter stated a claim of sex discrimination under the Equal Protection Clause); *Wilson v. Phoenix House* 42 Misc. 3d 677, 682, 683 (N.Y. Sup. 2013) (citing unpublished United States District Court for the Southern District of New York opinion by Judge Cote allowing claim of sex discrimination based on transgender status to proceed pursuant to 42 U.S.C. §1983)

(collecting cases). Accordingly, "discrimination on this basis is a form of sex-based discrimination that is subject to heightened scrutiny under the Equal Protection Clause." *Glenn v. Brumby*, 663 F. 3d at 1319.

Alternatively, contrary to defendants' assertions, transgender people qualify as a quasi-suspect class under this Circuit's jurisprudence, thus subjecting any classification on this basis to heightened scrutiny. In *Windsor*, decided after the District Court case relied upon by defendants, the Second Circuit held that, under existing Supreme Court precedent, "homosexuals" qualify as a quasi-suspect class because

> A) homosexuals as a group have historically endured persecution and discrimination; B) homosexuality has no relation to aptitude or ability to contribute to society; C) homosexuals are a discernible group with non-obvious distinguishing characteristics, especially in the subset of those who enter same-sex marriages; and D) the class remains a politically weakened minority.

*Windsor v. United States*, 699 F.3d 169, 181-182 (2d Cir. N.Y. 2012) Applying the factors cited by the Circuit in *Windsor*, transgender people clearly qualify as a "quasi-suspect" class, having historically endured persecution, discrimination, and criminalization under "sumptuary laws," gender identity or transgender status having no relationship to aptitude or ability to contribute to society, and transgender people continuing to experience discrimination and lack of political power.[14] *See, e.g., Norsworthy v. Beard,* No. 14-cv-00695, ---F. Supp. 3d --,

---

[14] *See* Joey L. Mogul, Andrea J. Ritchie, and Kay Whitlock, *Queer (In)Justice: The Criminalization of LGBT People in the United States* (Beacon Press 2011); *see also* Catherine Hanssens, Aisha C. Moodie-Mills, Andrea J. Ritchie, Dean Spade, and Urvashi Vaid. 2014. "A Roadmap for Change: Federal Policy Recommendations for Addressing the Criminalization of LGBT People and People Living with HIV." New York: Center for Gender & Sexuality Law at Columbia Law School, available at: http://web.law.columbia.edu/sites/default/files/microsites/gender-sexuality/files/roadmap_for_change_full_report.pdf (last visited December 15, 2014); National Gay and Lesbian Task Force and National Center for Transgender Equality, *Injustice at Every Turn: A Report of the National Transgender Discrimination Survey* available at:
http://www.thetaskforce.org/static_html/downloads/reports/reports/ntds_full.pdf (last visited December 15, 2014).

2014 WL 6842935, at *10 n.7 (N.D. Cal. Nov. 18, 2014)("The Ninth's Circuit's conclusion that heightened scrutiny should be applied to Equal Protection Claims involving discrimination based on sexual orientation…applies with at least equal force to discrimination against transgender people, whose identity is equally immutable and irrelevant to their ability to contribute to society, and who have experienced even greater levels of societal discrimination and marginalization." (internal citations omitted)).

Plaintiff has plausibly alleged that he was discriminated against based on sex and transgender status on multiple occasions while in NYPD custody. The Complaint clearly alleges that (1) he was subjected to questioning about his anatomy by defendant Creer to which, upon information and belief, no non-transgender arrestees were subjected; Compl. at ¶ 101 (2) defendant Verga referred to plaintiff using pronouns inconsistent with his gender identity, which, upon information and belief, defendant Verga did not do with other non transgender arrestees; *Id*. at ¶ 103 and (3) plaintiff was held under painful and humiliating conditions of confinement to which no non-transgender arrestees were subjected. *Id*. at ¶¶108-117. Plaintiff has also alleged the requisite level of intent on the part of defendant officers: he was known to be transgender to the officers who subjected him to invasive questioning and inappropriate pronouns, pulled him out of the cell where he was safely being held with men to chain him to a railing under painful and humiliating conditions, and ridiculed him. Based on this information, defendant officers intentionally treated plaintiff in a discriminatory and abusive fashion compared to all other individuals with whom he was arrested, none of whom were identified by officers as transgender, solely because he is transgender. *Id*. The factual allegations in the Complaint are specific and far beyond conclusory or speculative in this regard. *Id*.

Such intentional differential treatment clearly gives rise to an Equal Protection claim.

Moreover, defendants' proffered justification for such treatment does not, under the circumstances of this case, meet the rigorous standard of heightened scrutiny, or even the more deferential rational basis standard defendants urge this Court to adopt. *See* Defs. Mem. at 25. Even though rational basis review has been described as the Court's most deferential standard, it is not "toothless," *Matthews v. Lucas*, 427 U.S. 495, 510 (1976), and the government must make a "rational effort to deal with [its] concerns." *U.S. Dep't of Agriculture v. Moreno*, 413 U.S. 528, 535-38 (1973). Here, while defendants seem to argue that plaintiff was held under discriminatory, painful and humiliating conditions of confinement for his own safety, *see* Defs. Mem. at 25, there are no facts alleged in the Complaint that would suggest his safety was ever at risk prior to being removed from his cell and handcuffed to a railing in the bathroom.[15] To the contrary, neither plaintiff, nor any of the men he was housed with, raised a single safety concern before plaintiff was removed from the cell where he was being held and handcuffed to a bathroom railing for upwards of 8 hours while being forced to adopt painful positions by NYPD officers. Compl. at ¶108. Nor does the Complaint suggest any reason why, even assuming defendants' contentions with respect to plaintiff's safety were true, alternative arrangements could not have been made which did not require subjecting plaintiff to such painful, degrading and humiliating treatment. Indeed, to the contrary, the Complaint alleges that there were two additional cells available in the area where plaintiff was held chained to a railing next to the bathroom. *Id.* at ¶¶109. Accordingly, taking all of the allegations of the Complaint as true and drawing all reasonable inferences therefrom, plaintiff has plausibly alleged violation of his rights under the Equal Protection Clause.

---

[15] The allegation in the Complaint to which defendants refer in support of this contention speaks to the NYPD's general practice of holding transgender individuals with individuals who pose a risk to their safety, and makes no reference whatsoever to any safety concern specific to plaintiff in this instance. Defs. Mem. at 25, citing Compl. at ¶ 135.

Defendants argue, relying on a single District Court case, that there is no constitutional right to be housed with non-transgender arrestees. Defs. Mem. at 18-19. In so doing, defendants, like the defendants in *Shaw*, a case in which the D.C. District Court found an Equal Protection violation where a transgender woman in police custody was treated differently from all other individuals legally defined as women, misapprehend plaintiff's argument. *See Shaw v. District of Columbia*, 944 F. Supp.2d 43, 54-55 (D.D.C. 2013). Plaintiff is not claiming a constitutional right to be housed with any particular population – he is simply claiming the right not to be discriminated against and subjected to excessive force and unreasonable conditions of confinement based solely on his gender and transgender status.

Defendants are not entitled to qualified immunity on this claim because prohibitions on discrimination based on sex are clearly established. "Officials can be on notice that their conduct violates established law even in 'novel factual circumstances,' and there is no requirement that previous cases be 'fundamentally similar.'" *Shaw*, 944 F. Supp.2d 54-55 (*quoting Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). "The absence of transgender cases is not dispositive" to the qualified immunity analysis: the D.C. District Court held that the plaintiff in *Shaw* enjoyed same clearly established rights as any other female detainee. *Id.* Here plaintiff enjoys the same clearly established rights as any other male detainee – to not be treated differently from other male detainees without constitutionally sufficient justification. *See id.* Accordingly, defendants are not entitled to qualified immunity and plaintiff should be permitted to proceed with his Equal Protection claim.

### VI. Plaintiff has Plausibly Alleged Use of Excessive Force and Unreasonable Conditions of Confinement.

Defendants once again mischaracterize plaintiff's claims, arguing that there is no constitutional right to not be cuffed to rails for extended periods of time. Defs. Mem. at 23.

However, plaintiff's claim is in fact that he has a right not be subjected to excessive force or unreasonable conditions of confinement, particularly on a discriminatory basis. Plaintiff has plausibly alleged that by singling him out solely based on his gender identity and handcuffing him to a railing in a painful position for upwards of 8 hours outside a bathroom under humiliating and degrading conditions, defendants violated his 4th and 14th Amendment rights to not be subjected to excessive force, not be subjected to unreasonable conditions of confinement, and not be subjected to discrimination on the basis of gender and transgender status.

Turning first to the excessive force claim, police officers' application of force is excessive in violation of the Fourth Amendment if it is objectively unreasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor,* 490 U.S. 386, 397 (1989)). "Determining whether the force used…is 'reasonable' under the *Fourth Amendment* requires a careful balancing of the 'nature and quality of the intrusion on the individual's *Fourth Amendment* interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The determination of whether a particular use of force is excessive requires the court to assess whether "(1) the nature and severity of the crime leading to the arrest, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy v. Freshwater*, 623 F.3d 90, 99 (2d. Cir. 2010) (*citing Graham*, 490 U.S. at 396) *see also Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir.1999).

Each of the facts alleged in the Complaint, which must be taken as true, militate against the necessity of the use of force implicated in handcuffing plaintiff to a railing for upwards of 8 hours. Soon after he was brought to the 90th precinct, plaintiff was removed from the cell he was

safely housed in by Defendant Doe 1, who handcuffed plaintiff's right wrist to a metal handrail next to the bathroom.   Compl. at ¶ 108-109. Defendant John Doe 1 deliberately left Plaintiff in this unnatural and exceeding uncomfortable position upwards of 7 hours, causing lasting pain, injury and discomfort.  *Id*. at ¶109-111.  Adding insult to injury, at one point, Defendant Jane Doe 1, a New York City Police Officer, abruptly turned plaintiff's chair while his right hand was still cuffed to the railing in such a way as to pin his arm behind his back in an another painful position, causing Plaintiff to suffer more pain.  *Id*. at ¶113.   Consequently, he experienced pain, injury, discomfort and soreness in his wrist, shoulder and back for a week thereafter.  *Id*. at ¶111.

When considering Plaintiff's allegations of force and pain in light of the *Graham* factors, in it is clear that he has plausibly alleged a Fourth Amendment claim of excessive force. There was no justifiable basis for using any such force whatsoever, particularly in light of the fact that plaintiff was already detained, he posed no threat to any person's safety, and he was not a flight risk at the precinct. Plaintiff affirmatively alleges that no person with whom he was initially housed raised a safety concern with respect to him or his presence, nor did he raise any such concern with respect to himself or anyone else. *Id.* at ¶ 108. Further, he was charged with one of the most *de minimis* violations of the law – disorderly conduct, which is a violation, not a crime – for simply being present on the Brooklyn Bridge in the midst of First Amendment protected activity, during what this Court has repeatedly described as a peaceful and non-violent protest. *Garcia*, 865 F. Supp. 2d at 489-90. There was no allegation that plaintiff in any way resisted or attempted to evade arrest at any point in time. Clearly, the nature and severity of the crime does not support any use of force in this instance.  Accordingly, there was no conceivable justification

for keeping plaintiff handcuffed to a railing in a painful position for hours – other than the impermissible purpose of discrimination based on transgender status.

Contrary to defendants' assertions, "[i]t is well established that overly tight handcuffing can constitute excessive force." *Wall v. County of Orange*, 364 F. 3d 1107, 1112 (9th Cir. 2004); *see also Hansen v. Black*, 885 F. 2d 642, 645 (9th Cir. 1989)(roughly handcuffing a woman causing bruising and pain gave rise to excessive force claim as force used was unreasonable in light of the facts and circumstances); *Calamia v. New York*, 879 F.2d 1025, 1035 (2d Cir. 1989) (whether being handcuffed in a painful posture for five or six hours is unreasonable is a question of fact for a jury).[16] "The Fourth Amendment's requirement that a seizure be reasonable prohibits more than the unnecessary strike of a nightstick, sting of a bullet, and thud of a boot." *Fontana v. Haskin*, 262 F.2d 871, 878 (9th Cir. 2001). This is particularly true where the force was used for an impermissible and discriminatory purpose. Contrary to defendants' contentions, plaintiff has sufficiently pled facts establishing that he was handcuffed for purposes other than security. Assuming the facts alleged in the complaint to be true, it was simply not necessary for plaintiff to be handcuffed to a railing in a painful position for 8 hours – and he plausibly alleges that he was subjected to this treatment solely based on his transgender status.

Finally, defendants claim that Plaintiff's injuries are *de minimis*, warranting the dismissal of this claim.  In doing so, they rely on cases that that are distinguishable and fail to recognize that the factors in *Graham* militate against the use of force in this instance, let alone, force that caused Plaintiff to suffer in pain for hours. For instance, defendants' reliance on *Guerrero v. City*

---

[16] The instant case is easily distinguishable from *Cruz v. Reiner*, 11cv2131, 2011 U.S. Dist. LEXIS 142992 (S.D.N.Y. December 13, 2011), in which a pre-trial detainee was handcuffed to the bottom of a chair in the Kings' County District Attorney's office. As an initial matter, the plaintiff in that case claimed no physical injury whatsoever. Secondly, unlike a police precinct in which there are multiple cells, it appears that no alternative means of securing the plaintiff was available in the DA's office. Finally, the court did not analyze plaintiff's claim under the Fourth Amendment as an excessive force claim, but rather only considered whether plaintiff had alleged a due process claim under the 14th Amendment. *See id.* at 18-20.

*of New York*, 2013 U.S. Dist. LEXIS 157783 (S.D.N.Y. Nov. 4, 2013) is misplaced.  The

plaintiff in *Guerrero* merely alleged he sustained an injury from the handcuffs that were placed

on him after his arrest.  It was a given that an arrestee will be handcuffed at the point of an arrest.

Here, however, there was no justification for the Plaintiff to have been handcuffed to a railing for

upwards of 8 hours while inside the precinct, which is further demonstrated by the fact that no

other arrestees were subjected to the same treatment.  Compl. at ¶117.   Further, unlike the

circumstances here, there were no allegations that the defendants deliberately handcuffed the

plaintiff in *Guerrero* in a manner that would cause the plaintiff in that case to experience pain

and there were also no allegations that it caused the plaintiff to experience any significant pain

for an extended period of time.  Conversely, here plaintiff alleges Doe defendants handcuffed

him in a manner they knew would cause him pain, particularly doing so for such an extensive

period of time, and unlike the plaintiff in *Guerrero*, it caused him to experience pain for a

prolonged period of time.

      Indeed, in *Lemmo v. McKoy*, cited by defendants, a plaintiff's excessive force claim was

permitted to proceed past summary judgment where the only injury sustained was pain over the

course of "a week or two" caused by defendant police officers wrenching plaintiff's thumbs after

he allegedly resisted efforts to fingerprint him. Given that there is no allegation whatsoever here

that plaintiff resisted any officer at any time, and he sustained soreness of the wrist and shoulder

for a similar period of time after his arm was wrenched behind him by the Doe officers, it stands

to reason that, under the precedent cited by defendants, plaintiff should be held to have plausibly

alleged a claim of excessive force at this stage of the litigation.[17] *See Lemmo v. McKoy*, 2011

U.S. Dist LEXIS 23075, 14-15 (E.D.N.Y. March 8, 2011).

---

[17] Notably, all of the remaining cases cited by defendants for the proposition that plaintiff cannot plausibly state a
claim for excessive force based on being handcuffed to a railing and forced to adopt painful positions for upwards of

With respect to plaintiff's overall conditions of confinement, pre-trial detainee's rights are violated if they are "incarcerated under conditions posing a substantial risk of serious harm," and the official responsible demonstrates "deliberate indifference to inmate health and safety" of the detainee. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Shaw*, 944 F. Supp.2d at 57 (D.D.C. 2013). Plaintiff has plausibly alleged that he was held under conditions that objectively posed a substantial risk of serious harm to his right arm, which was handcuffed to a railing for an extended period of time, particularly when he was roughly placed in a position pinning his arm behind his back.

Additionally, the officers involved demonstrated a subjective deliberate indifference to his health and safety when they forcibly confined him in close proximity to a bathroom under conditions creating a substantial risk of injury and infection. While plaintiff concedes that verbal harassment and abuse, in and of itself, does not rise to the level of constitutional violations, plaintiff's reference to such harassment plausibly alleges the requisite subjective culpable intent for conditions of confinement claim. *See Shaw*, 944 F. Supp.2d at 59 (D.D.C. 2013) (citing *Hudson v. McMillan*, 503 U.S. at 6-7). While discovery may well establish, as defendants speculate, that the officer who singled plaintiff out for discriminatory, humiliating, and painful conditions of confinement did so solely out of a benign concern for plaintiff's safety, taking the facts alleged in the complaint as true, as the Court must at this stage of the litigation, plaintiff has alleged facts sufficient for the court to conclude that the subjective culpable intent prong of an unconstitutional conditions of confinement claim is met.

---

8 hours were decided at the summary judgment stage, after no evidence whatsoever of physical injury was adduced. The relevant inquiry is a fact specific one, and courts have routinely sustained claims of excessive force based on handcuffing alone. *See Lynch v. City of Mt. Vernon*, 567 F. Supp. 2d 459, 468 (2008) (gathering cases); *Davenport v. County of Suffolk*, 99cv3088, 2007 U.S. Dist. LEXIS 12696, *29-35 (E.D.N.Y. February 23, 2007).

**VII.      Plaintiff has Plausibly Alleged Municipal Liability for Failure to Train, Officers to Not Handcuff Transgender Prisoners to Rails for Extended Periods**

The allegations made in the Amended Complaint are more than sufficient to plausibly allege a claim, pursuant to *Monell v. New York Department of Social Services*, 436 U.S. 658, 693–701 (1978), that defendant City of New York violated plaintiff's constitutional rights by failing to train NYPD officers with respect to placement of transgender individuals in police custody.

As an initial matter, contrary to defendants' contentions, plaintiff need not plead a formal, written policy in order to establish such a claim. *Vann v. City of New York*, 72 F.3d at 1049. Secondly, as noted above, plaintiff need not establish a right to be housed with non-transgender arrestees – he need only establish a custom, policy or practice of discrimination against transgender arrestees based on gender and transgender status. Plaintiff has plausibly alleged the existence of such a custom, policy or practice, as well as final policymakers' awareness of its existence and their deliberate indifference thereto.

Plaintiff's allegations regarding the existence of a widespread custom and practice of subjecting transgender arrestees to unconstitutional conditions of confinement are far from conclusory – he makes specific allegations that the City has been on notice of a pattern of handcuffing transgender people to rails and chairs for extended periods of time in police precincts since at least 2001, but has exhibited deliberate indifference to the constitutional violations flowing therefrom by failing to adopt a clear policy regarding housing of transgender arrestees.[18] *See, e.g.* Compl. at ¶ 134 (alleging the existence of an internal memorandum to high

---

[18] In June of 2012, less than a year after plaintiff's arrest, the New York City Police Department released new Patrol Guide provisions requiring that transgender people be held with individuals of the same gender identity absent safety concerns, in which case they were to be held separately and treated as special category prisoners. The new policy explicitly states that transgender individuals shall not be handcuffed to chairs or railings for extended periods

ranking NYPD officials up to and including Commissioner Kelly noting complaints of

transgender individuals being handcuffed to railings and chairs in NYPD precincts and proposing

a policy change to address the issue that was not adopted) Each of defendants' arguments to the

contrary are easily dismissed.

Defendants first claim that the conduct complained of is not unconstitutional, and

therefore is not properly subject to a *Monell* claim – however, as argued in Sections V and VI

*supra*, the use of excessive force and unreasonable conditions of confinement implicated in

handcuffing transgender people to railings for extended periods of time, along with the

discrimination inherent in singling transgender people out for such treatment, are sufficient to

establish underlying constitutional violations.

The Complaint plausibly alleges that defendants were clearly placed on notice of a

pattern of such constitutional violations as early as 2001 by reports referenced in an internal

NYPD memorandum, [19] as well as a report published by Amnesty International in 2005,[20] by

---

of time. *See* Paul Schindler, *NYPD Announces New Policies on Interactions with Trans New Yorkers*, Gay City News, June 12, 2012, available at: http://gaycitynews.nyc/nypd-announces-new-policies-on-interactions-with-trans-new-yorkers/ (last visited December 15, 2014).

[19] No further details were alleged with respect to the content of the memorandum in question out of respect for a protective order in place with respect to materials produced in discovery in *Tikkun v. City of New York*, 05cv9901. However, defense counsel is aware of the precise contents of the memorandum given that she also served as defense counsel in *Tikkun*. Plaintiff would be happy to amend his complaint to provide more specifics of the memorandum if defendants were amenable to lifting the protective order, or to submitting the memorandum in question under seal for *in camera* review.

[20] *See* Amnesty International, *Stonewalled:  Police Abuse and Misconduct Against Lesbian, Gay, Bisexual and Transgender People in the U.S.*" (Amnesty International 2005) (AMR 51/122/2005) at 60 ("In November 2003, a transgender man was reportedly handcuffed to a pole because police officers did not know where to house him.") The Amnesty International report referenced here is not an "article" as defense counsel would have it, but a 147 page report detailing extensive allegations of unconstitutional conditions of confinement of LGBT people across the U.S., including New York City. Moreover, the report is cited for the purpose of establishing notice to the City of the existence of a pattern and practice of unconstitutional conduct, not to establish the pattern itself. Here, as in *Shaw*, citation to outside sources provides "factual grounding to support the inference that the risk to transgender detainees was obvious, well-documented, and known to defendants," as well as "notice that conduct is unconstitutional" *Shaw*, 944 F. Supp.2d at 59. The cases cited by defendants as supporting preclusion of consideration of this allegation are inapposite, as all were decisions on motions for summary judgment in which articles were offered as evidence for the truth of the matter asserted rather than for the purposes of determining whether plaintiff has plausibly alleged that the City was on notice of a pattern and practice of unconstitutional conduct.

deposition testimony given in 2007 in prior litigation against the City.[21] Far from relying on a single isolated instance of similar violations, plaintiff relies on numerous reports of transgender individuals being handcuffed to railings or chairs in police precincts reported to the NYPD prior to plaintiff's arrest in 2011. Failure to train, supervise and discipline employees with respect to proper treatment of transgender arrestees, and to explicitly ban handcuffing transgender arrestees to chairs or railings, thus gives rise to municipal liability under these circumstances.

## CONCLUSION

For the foregoing reasons, plaintiff has plausibly alleged violations of his rights under the First, Fourth, and Fourteenth Amendments flowing from his arrest without probable cause, and from being subjected to excessive force and discriminatory treatment based on gender and transgender status while in NYPD custody. Plaintiff has also plausibly alleged a municipal custom, policy or practice of giving protesters implicit permission to engage in otherwise unlawful activity, and subsequently subjecting them to mass arrest without providing those present with fair warning and an opportunity to conform their conduct with the law, as well as a municipal policy, custom or practice of engaging in discriminatory treatment of transgender arrestees. Finally, plaintiff has plausibly alleged supervisory liability on the parts of defendants Bloomberg, Kelly, Esposito, Hall, Jaskaran and Devlin. Accordingly, defendants' motion to dismiss should be denied in its entirety.

Respectfully submitted,
_____/s/_____
ANDREA J. RITCHIE (AR 2769)

---

[21] Defense counsel here erroneously assumes that plaintiff is referring only to the deposition testimony of the plaintiff in *Tikkun*. In fact, plaintiff is also referring to the deposition testimony of *Monell* witnesses in that case, including, but not limited to, the deposition testimony of Nick Peterson, who specifically described similarly being held handcuffed to a chair in a Bronx precinct for an extended period of time while NYPD officers repeatedly ridiculed him as they walked past.

990 President St. 1B Brooklyn, NY 11225
(646) 831-1243


cc:      Cheryl Shammas, Esq.
          Dara Weiss, Esq.
          Assistant Corporation Counsel
          New York City Law Department
          VIA ECF